UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TSURT, LLC and PEARL JAM, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> VARIOUS JOHN DOES, JANE DOES, and ABC COMPANIES <br><br> Defendants. | CIVIL CASE NO. <br><br><br> **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION WITH TEMPORARY RESTRAINING ORDER AND <u>ORDER OF SEIZURE</u>** |

## I.   INTRODUCTION

This is a case of unfair competition and trademark infringement against parties who are selling unlicensed and infringing merchandise bearing the trademarks, likenesses and logos of the musical group known as Pearl Jam.

Plaintiffs request entry of an *ex parte* temporary restraining order as well as an order directing seizure of the infringing merchandise. As will be noted, such relief finds authority in the law and has been granted by courts around the United States in cases such as the instant matter.

These orders are not requested lightly. Without entry of these orders, neither this Court nor Plaintiffs will be able to prevent the sale of the infringing merchandise. Experience in other cases has shown that unless such orders are issued *ex parte*, Defendants will simply sell their infringing merchandise. Hence, a temporary restraining order and order of seizure is needed now, *ex parte*.

1

## II.   STATEMENT OF FACTS

Plaintiff TSURT, LLC ("TSURT") is the exclusive licensee for the sale of all merchandise bearing the Pearl Jam trademark, likenesses and logos.

Pearl Jam is a world famous musical group who is commencing a nationwide tour. They are scheduled to appear at Madison Square Garden, in New York, New York, on September 3 and 4, 2024. About 250,000 people have attended or are expected to attend the Pearl Jam concerts on this tour.

Inside the concert halls across the country, Plaintiffs have sold and expect to sell substantial quantities of merchandise, such as t-shirts, bearing the Pearl Jam trademark, likenesses and/or logos. These sales produce income for the concessionaires, performing artists and the concert facility together with taxes for the local cities and towns, state governments and the federal government.

This action has been instituted to remedy what is tantamount to the theft of a substantial portion of Plaintiffs' income by the sale of unlicensed merchandise by "bootleggers". Bootleggers have made it a practice of following nationally popular performers across the country on their concert tours to sell infringing merchandise in the vicinity of concerts.

They sell unauthorized merchandise bearing the names, logos, likenesses, trademarks and artwork of musical performers without their permission and without payment of royalties to them. As a result, the bootleggers cause confusion in the minds of the consuming public as to who produces said merchandise.

As a result of the aforesaid bootlegging activities, substantial income is diverted from concert performers, legitimate concessionaires and performing artists. The names and reputations of the legitimate concessionaires and musical performers are traded upon and frequently injured by the inferior merchandise. To combat this problem, legitimate concessionaires, such as TSURT, have undertaken a national program to halt the illegal activities of bootleggers. This action is part of that program.

The Court is respectfully referred to the Declarations of Kenneth A. Feinswog and Christopher Siglin that are submitted herewith. Mr. Feinswog's declaration outlines the history

of bootlegging and the problems that parties such as TSURT have had in dealing with bootleggers.

Mr. Siglin is President and owner of TSURT, the music merchandising company that has been granted the exclusive license to sell Pearl Jam merchandise on this tour. In his declaration, Mr. Siglin relates his experience in dealing with bootleggers to exhibit that the only effective relief that Plaintiffs can obtain against said parties is nationwide seizure relief.

### III. LEGAL ARGUMENT

#### A. A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ARE MANDATED HERE AS PLAINTIFFS MEET ALL TESTS FOR SUCH EQUITABLE RELIEF.

It is well established in law that a plaintiff may obtain a temporary restraining order and preliminary injunction against trademark infringement and unfair competition. *Ross-Whitney Corporation v. Smith-Kline & French Laboratories*, 207 F.2d 190 (9th Cir. 1953).

Although the right to a preliminary injunction has variously been described by two, three or four-part tests, these tests "are not separate tests but the outer reaches of a single continuum". A preliminary injunction is justified when: "(1) the likelihood of irreparable injury in the absence of such an injunction; and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly" in its favor. *Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532,537 (2nd Cir. 2005) citing *Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168, 173 (2nd Cir. 2000). Plaintiffs meet all the criteria of the aforesaid tests because of the flagrant activities of Defendants in selling goods bearing identical copies of the Pearl Jam trademark, logos and likenesses.

#### 1. PLAINTIFFS WILL PREVAIL ON THE MERITS AT TRIAL.

##### a. Defendants Have Violated 15 U.S.C. §1125 (a) and 15 U.S.C. §1114

Section 43(a) of the Lanham Act (15 U.S.C. 1125(a)), entitled "False Designations of Origin and False Descriptions Forbidden" provides:

3

(a) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ---

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person...shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

The stated intent of the act is to protect persons engaged in ". . . commerce against unfair competition," and "to prevent fraud and deception in such commerce." (15 U.S.C. §1127). Although §43(a) caused some judicial confusion in its early years, the courts are now in agreement that Congress, in enacting this section, created a new federal statutory tort which is remedial and should be broadly construed. *CBS, Inc. v. Springboard Int'l Records*, 429 F.Supp. 563, 566 (S.D.N.Y. 1976).

The elements of a cause of action under Section 43(a) are: (1) the involvement of either goods or services; (2) activity which affects interstate commerce; and (3) a "false designation of origin, or any false description or representation . . . "relating to the product. *CBS, Inc., supra* at 566.

The Court in *New West Corp. v. NYM Co. of California, Inc*., 595 F.2d 1194 (9th Cir., 1979), summarized the settled law in relation to actions prohibited by §43(a) as follows:

"To recover for a violation of this act, it is not necessary that a mark or trademark be registered (though it is registered in this case). The dispositive question is whether the party has a reasonable interest to be protected against false advertising . . ."

Trademark or unfair competition, preclude one from using another's distinctive mark or name if it will cause the likelihood of confusion or deception as to the origin of the goods.

Similarly, under the Lanham Act (43(a)), the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks . . . ."

As demonstrated conclusively in the declarations filed herewith, Defendants will appropriate the Pearl Jam trademark, likenesses and logos and use them in their sale of bootleg

4

merchandise throughout the United States. Said misappropriation will create the impression that the bootleg merchandise is in some manner connected with or originates from the owner of the PEARL JAM mark or its licensee, TSURT, and as such, creates the likelihood of deception as to the origin of these products. See *Apollo Distributing Co. v. Apollo Imports, Inc.*, 341 F.Supp 445, 458 (S.D.N.Y. 1972). Defendants' actions are undeniably in violation of the Lanham Act.

There is no need to show that any false description or representation is willful or intentional. *Parkway Bacon Company v. Freihofer Bacon Company*, 255 F.2d 641, 648 (3d Cir. 1968). All that is required is that the representations or descriptions either be "false" or such as is tending falsely to describe or represent the goods or services in question. Thus, liability is not restricted solely to descriptions that are literally false, but it extends to instances where the defendant creates a false impression. *U-Haul International, Inc. v. Jartran, Inc.*, 681 F.2d 1159 (9th Cir. 1982).

The primary issue that Plaintiffs must prove is that there is a likelihood of confusion, mistake, or deception in Defendants' use of the trademarks and trade name. *New West Corp. v. NYM Co. of California, Inc., supra*. at 1202 ("ultimate test is whether the public is likely to be confused or deceived by the similarity of the marks"). All that is required is "likelihood of confusion". It is not necessary to prove that any person has been actually mistaken, confused or deceived; it is sufficient there be a likelihood of confusion, mistake or deception. *Bank America Corp. v. Bamieh*, 188 U.S.P.Q. 380, 382 (N.D. Cal. 1975).

The cases which have dealt with the situation where a defendant has been so bold as to sell counterfeit products with copies of a plaintiff's trademarks have made it clear the Plaintiffs will prevail on the merits. In *re Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979), the Second Circuit Court of Appeals mandated a district court to enter an *ex parte* temporary restraining order without notice to counterfeiters of a plaintiff's products. The Court noted that:

> ". . . the likelihood of product confusion exists. The allegedly counterfeit Vuitton merchandise is virtually identical to the genuine items. Indeed, the very purpose of the individuals marketing the cheaper items is to confuse the public into believing that it is buying the true article."

Plaintiffs have established that much more than the possibility that Plaintiffs may prevail on their trademark infringement and unfair competition claims with Defendants selling Pearl Jam merchandise to Pearl Jam fans outside Pearl Jam concerts. In view of the foregoing, an immediate temporary restraining order and preliminary injunction is necessary to prevent irreparable harm and injury to Plaintiffs.

## 2. UNLESS DEFENDANTS ARE ENJOINED IMMEDIATELY, PLAINTIFFS WILL HAVE NO ADEQUATE REMEDY OF LAW AND WILL BE IRREPARABLY INJURED.

One of the realities of trademark and trade name infringement is that money damages for lost reputation are rarely adequate. Resting in equity, trademark damages are exceedingly difficult to measure in terms of dollars. *Omega Importing Corp. v. Petri-Kline Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971).

Plaintiffs submit that the harm they may suffer here from Defendants' use of the Pearl Jam mark is immeasurable since customers have bought and will continue to buy Defendants' goods thinking that they are Plaintiffs' goods.

The damage caused by confusion to the public is incapable of precise financial measurement given the intangible nature of an asset such as goodwill. *Communication Satellite Corporation v. Comset, Inc.*, 429 F.2d 1245, 1253 (4th Cir. 1971).

A trade name or trademark is a badge. It represents to the world the identity of the source of the goods that bear it. TSURT's and Pearl Jam's reputations rest with their trade names and trademarks. Where Defendants use the Pearl Jam mark, customers may associate Defendants' goods with Pearl Jam. Pearl Jam is entitled to its own reputation and not that of others. As Judge Learned Hand aptly noted in *Yale Electronic Corp. v. Robertson*, 26 F.2d 972, 974 (2d Cir. 1928), with respect to a trademark owner:

> "his mark is his authentic seal; by it he vouches for goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a

> reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask."

Thus, if Defendants are permitted to use the Pearl Jam mark, then Defendants will be permitted to trade upon and tarnish Plaintiffs' valuable reputations and they will suffer irreparable injury if a preliminary injunction is not entered.

### 3. THE BALANCE OF IRREPARABLE HARM FAVORS PLAINTIFFS.

The irreparable injury to Plaintiffs, and the public, weighs strongly in favor of granting the requested relief. The inconvenience to Defendants, if the preliminary injunction issues, is merely economic, consisting of lost sales of unauthorized, unlicensed and infringing products. Defendants have absolutely no legitimate interest in retaining unauthorized, unlicensed and infringing goods.

Given "the probable outcome of this action, this is a loss which [Defendants] may justifiable be called upon to bear." *Corning Glass Works v. Jeanette Glass Co.*, 308 F.Supp. 1321, 1328 (S.D.N.Y. 1970), *aff'd* 432 F.2d 784 (2d Cir. 1970). In weighing Defendants' possible economic loss against Plaintiffs' already occurring loss to sales, and its goodwill and reputation built up through years of selling high quality products, as well as the long-term disastrous effects of unfettered counterfeiting on their business, the balance falls heavily in Plaintiffs' favor.

### 4. THE ISSUANCE OF AN INJUNCTION IS NECESSARY TO PROTECT THE PUBLIC INTEREST.

Finally, whatever the rights of Plaintiffs might be, the right of the public to be free from the deception and misbranding which results from unfair competition by another's use of a trademark are transcendent and aptly may be considered in such a case. As the court noted in *Stahly, Inc. v. M.H. Jacobs Co.*, 183 F.2d 914, 917 (2d Cir. 1950):

> "It must be remembered that the trademark laws and the law of unfair competition are concerned also with the protection of the public from fraud and deceit . . . and it is obvious that the right of

7

> the public to be so protected is a right which transcends the rights of the individual trademark owner and is beyond his power to waive."

This is a case where the public is being deceived by Defendants' use of the Pearl Jam trademark in order to trade upon TSURT's and Pearl Jam's reputations and sell merchandise to unsuspecting people.

In *Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272 (9th Cir. 1982), the Ninth Circuit Court of Appeals emphasized the necessity for stringent remedies against those who seek to counterfeit trademarks and labels in order to trade upon another's goodwill. The Court noted:

> "In addition to the harm caused the trademark owner, the consuming public is equally injured by an inadequate judicial response to trademark infringement. Many consumers are willing to pay substantial premiums for particular items which bear famous trademarks based on their belief that such items are of the same high quality as is traditionally associated with the trademark owner. As a result of this trademark infringement, the consuming public is denied the benefit of their bargains and the reputation and goodwill of the trademark owner is accordingly harmed. For these reasons, it is essential that the trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement."

Accordingly, the public will be irreparably injured by Defendants' use of the Pearl Jam trademark.

### B. THIS COURT HAS THE AUTHORITY TO ISSUE AN EX PARTE TEMPORARY RESTRAINING ORDER AND SEIZURE ORDER.

Once a violation of the Lanham Act is demonstrated, injunctive relief will readily issue pursuant to Sec. 34 (15 U.S.C. §1116) thereof. *Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1013 (5th Cir. 1975), *cert. denied*, 423 U.S. 868, *reh. denied*, 423 U.S. 991 (1975). 15 U.S.C. §1116 gives the court the power to grant injunctions ….

"to prevent the violation of right" of the owner of a mark or to prevent violations of 15 U.S.C. §1114 and 15 U.S.C. §1125(a).  Pursuant to the Lanham Act, this Court has the authority to grant *ex parte* seizure.  The critical operative word is "prevent" which, in the instant case, is impossible without nationwide seizure.

As to enforcement remedies, seizure is specifically singled out and mandated in 15 U.S.C. 1118 which provides that:

> "In any action under this Act, in which a violation of any right of the registrant of a mark . . . or a violation under Section 1125(a) of this title shall have been established the court may order that all labels, signs, prints, packages, wrappers, receptacles and advertisements in the possession of the defendant, bearing the mark or any reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices and other means of making the same, shall be delivered up and destroyed."

The foregoing sections grant this Court the right to fashion a nationwide order to seize and deliver for destruction infringing goods.

Perceiving both the unfortunate reality of this situation, the covert nature of bootleggers' activities, and the vital need to establish an economic disincentive for trademark counterfeiting, trademark owners sought and district courts now grant what are generally referred to as national "seizure orders."  Such Orders empower the United States Marshals, or other law enforcement authorities to seize infringing merchandise within a three to twenty-five mile radius of concert performances of the musical group that is the subject of said action.  Copies of many of these orders are annexed to the declaration of Kenneth A. Feinswog submitted herewith.

It is essential to note that in most instances the nationwide service orders granted by the various courts have (a) gone unreported and, more to the point (b) have rarely if ever been challenged since the Defendants are loath to appear.  In one of the few decisions where a nationwide seizure order was contested by a defendant, in the action entitled *Great Southern et al v. John Doe et al,* 82 Civ.-294, N.D. Ohio, April 30, 1984, the Honorable Nicholas J. Walinski upheld a nationwide seizure order and stated:

> "The Court first notes its authority to grant injunctions of a nationwide scope. Section 34 of the Lanham Act 15 U.S.C. §1116 gives 'any district court of the United States' the power to grant injunctions which 'may be served on the parties . . . anywhere in the United States where they may be found, and shall be operative and may be enforced by the Court by which such injunction was granted, or by any other U.S. District Court in whose jurisdiction the defendant may be found.' Particularly in circumstances where the Plaintiff's market area is nationwide, the Plaintiff must be entitled to nationwide protection. See, e.g. *Golden Door, Inc. v. Odisho*, 437 F.Supp 956 (N.D. Cal. 1977); *Five Platters, Inc. v. Purdie*, 419 F.Supp. 372 (D. Md. 1976). Because Plaintiffs in this case are a musical group presently engaged in a tour throughout the U.S., this Court's issuance of a nationwide injunction was necessary and rightful." (A copy of said decision is annexed to the Declaration of Kenneth A. Feinswog as Exhibit C)**.**

The court, through its grant of equity power, has the authority to issue such relief as merits the necessities of each particular case. *Hecht Company v. Bowles*, 321 U.S. 321 (1944). An equitable remedy is a blend of what is necessary, what is fair and what is workable. The court must look to the practical realities and necessities involved in reconciling competing interests. *Lemon v. Kurtzman*, 411 U.S. 192, 200-201 (1973). The practical reality of the present set of circumstances is that Plaintiffs have no other recourse and has no means of preventing their loss without nationwide seizure relief. Without the remedy of nationwide seizure, this lawsuit will be an exercise in futility**.**

## IV. CONCLUSION

Defendants' unauthorized use of the Pearl Jam trademark infringes upon Plaintiffs' rights. Given Defendants' reckless disregard for Plaintiffs' rights, nothing short of nationwide injunctive restraint and seizure will prevent Defendants from infringing on the Pearl Jam mark in

the future.  As noted above, under these circumstances, Courts have not hesitated to direct the nationwide seizure of all infringing merchandise.

     For the reasons set forth above and in the motion, complaint and declarations submitted herewith, Plaintiffs respectfully request that their motion for a Temporary Restraining Order, Preliminary Injunction and Order of Seizure be granted.


Dated:  September 2, 2024
       Culver City, CA


                            Respectfully Submitted,


                  By:    <u>s/Kenneth A. Feinswog</u>
                            Kenneth A. Feinswog
                          Attorney for Plaintiffs
                          400 Corporate Pointe, Suite 300
                          Culver City, CA  90230
                          Telephone:  (310) 846-5800
                          Email:  kfeinswog@gmail.com